34 C.C.P.A.(Patents)

In re WINTON.
Patent Appeal No. 5266.

Court of Customs and Patent Appeals.
Feb. 11, 1947.

L. G. Miller, of Boston, Mass., for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 4 and 6 in appellant's application for a patent for an invention for a liquid level indicat-

ing device for use particularly on ships to indicate the level or amount of water in a boiler. The invention is of particular use when the ship rolls or pitches, and the water in the boiler surges from one part to another.

Claims 1, 2, 3, 5, 7, 8, 9, 10, 11, 12, 14, 15, and 16, were allowed by the Primary Examiner.

The appealed claims read:

"4. A liquid level indicating mechanism for systems subject to bodily displacement of the type wherein a liquid column is subjected to opposed pressures, the difference between which is proportional to the liquid level, a liquid-containing portion of the mechanism including a chamber and conduits opening into the chamber for the passage of liquid therethrough under the influence of the pressures involved, at least one of the conduits trending upwardly adjacent the chamber, and a body of relatively heavy liquid in the bottom of the chamber which on inclination of the system in a given direction submerges the mouth of said one conduit and tends to rise therein.

"6. A liquid level indicating mechanism for systems subject to bodily displacement comprising a differential manometer, a connection for placing one side of the same in communication with the body of liquid being measured, a connection for placing the other side of the same in communication with a source of fixed hydrostatic pressure, and valve means for interrupting one of said connections when the system is inclined to a determined angle including a chamber interposed in a liquid-containing portion of the system providing in the upper portion thereof a direct passageway and having in the bottom thereof a body of heavy liquid operating when the system is inclined and the level of the liquid rises at one side of the chamber to close off said passageway."

The references relied upon are: Ritz-Woller, 1,086,561, February 10, 1914; Newton, 1,382,532, June 21, 1921; Sneed, 2,133,215, October 11, 1938; Brown et al., 2,225,608, December 24, 1940.

Each of the appealed claims defines a liquid level indicating means especially adapt-

ed for use in connection with boilers or similar installations on ships. In such installations, the tilting of the boiler, due to movement of the ship, may result in an entirely inaccurate indication of the liquid level. Appellant's mechanism reduces such an inaccuracy by restricting the flow of liquid from one part of the indicating means to another during periods when the system in which the level is to be indicated is tilted.

In one illustrated form of appellant's invention there is provided a closed receptacle containing a body of mercury which only partially fills the receptacle. Two pipes enter the receptacle through the top and terminate therein above the normal level of the mercury. One of the pipes is connected to a boiler at a point near the bottom thereof, while the other pipe is connected to a small chamber adjacent the boiler, in which chamber water is maintained at a constant level. The chamber is connected at its upper portion to the upper portion of the boiler, so that the same pressure is maintained in the boiler and in the chamber. The upper part of the mercury-containing receptacle is filled with an indicating or measuring liquid, such as an acetylene tetrabromide, which is heavier than water but much lighter than mercury. The indicating liquid extends for some distance up the portions of the pipes adjacent the mercury-containing receptacle, and one of these portions is provided with a window through which the level of the indicating liquid may be observed.

With appellant's arrangement, when the ship on which the system is located is in normal position, so that the system is level, the mercury forms, in effect, the bottom of the receptacle in which it is located, while the upper part of the receptacle and the adjacent portions of the pipes form a U-tube filled with indicating liquid. As hereinbefore explained, one leg of the U-tube is connected to the boiler below the water level therein, while the other leg of the tube is connected to a body of water maintained at a constant level. Any variation in the level of the water in the boiler will, therefore, cause the indicating liquid to rise in one leg of the U-tube and to fall in

the other, and the level of the indicating liquid in the U-tube thus affords an indication of the water level in the boiler. The tilting movement of the ship also tilts the body of mercury, so that it rises in one part of the receptacle and seals the mouth of one of the pipes which form the U-tube. The mercury which thus enters the end of the pipe will be forced up for some distance due to the tilting of the system but, since mercury is much heavier than the water or indicating fluid, this distance will be comparatively small, and the distortion of the reading of the meter will be much less than it would be if the mercury were not present, so that the meter will at all times give an approximately accurate reading.

The patent to Brown et al. discloses an arrangement which is substantially identical with that of appellant's except that it does not contain a body of mercury and includes no provision for compensating for tilting of the system. The Brown et al. arrangement comprises a boiler, a constant level chamber, a U-tube, and an indicating liquid.

The patent to Newton discloses a system for measuring the water level in the engine jacket of an automobile. The system includes a pipe which is connected at one end with the jacket below the water level therein and at the other end with a gauge glass. The upper end of this glass may, if desired, be connected to the upper part of the jacket. With that arrangement, when the car is in normal position, the water in the gauge glass will be at the same level as that in the jacket. When the car is tilted, however, as in going up or down hill, the engine will rise above or fall below the level of the glass. In order to prevent that condition from causing an inaccurate reading, the patentee provides two valves, either of which can shut off communication between the jacket and the gauge glass. The valves rest on an arm which is connected to a pivoted weight which hangs in a vertical position. The arrangement is such that when the car is horizontal, both valves will be open, but when the car is in an inclined position, the relative movement between the weight

and the car will close one or the other of the two valves, thus preventing the flow of water between the jacket and the gauge glass and preserving an accurate reading of the glass.

The patent to Ritz-Woller shows a liquid measuring system for automobiles comprising a tank and a gauge which is connected at its top and bottom to the top and bottom of the tank respectively. In the pipe which connects the tops of the tank and gauge there is located a valve which comprises a normally horizontal tube which is closed at each end by a sleeve of chamois, and contains a body of mercury. Gasoline and air can pass through the chamois, but mercury cannot. When the system is level, the mercury remains in the middle of the tube, but tilting causes it to run to one end or the other, thus sealing the tube and cutting off the flow of air between the tank and gauge at their upper portions which in turn prevents the flow of liquid between the two at their lower portions and thus preserves an accurate reading of the gauge. As an alternative to the mercury valve, the patent discloses a valve actuated by a weight in a manner similar to that employed by the patentee Newton.

The patent to Sneed shows a valve for controlling the flow of illuminating gas to a burner. The valve comprises a closed chamber which is mounted on a pivot so that it can be tilted. Inlet and outlet pipes for the gas enter at the top of the chamber and terminate above the bottom thereof. The chamber contains a body of mercury which, when the chamber is horizontal, lies below the mouths of the pipes, but which acts to seal one pipe when the chamber is tilted.

Appealed claim 4 was rejected by the tribunals of the Patent Office on the disclosure in the patent to Newton in view of the disclosures in the patents to Sneed or Ritz-Woller.

The patent to Newton discloses the combination of a liquid level indicating means and a gravity operated valve, as called for by claim 4, and it was held by each of the Patent Office tribunals that it would not involve invention to replace the gravity operated valves, disclosed in the patent to Newton, by the equivalent mercury valve, disclosed in either the patents to Sneed or Ritz-Woller, and that such substitution would produce a structure as called for by appealed claim 4.

As hereinbefore noted, the patent to Newton discloses the idea of placing in the conduit, between the gauge and the vessel containing the liquid whose level is to be indicated, a double valve which is adapted to shut off the flow of liquid upon tilting in either direction.

We think it is clear, as held by the tribunals of the Patent Office, that it would not involve invention to replace the valves disclosed in the patent to Newton by the mercury valve disclosed in the patent to Sneed.

The mercury valve in the patent to Sneed is disclosed as applying to gas rather than liquid, however, since the patentee's valve is adapted to be used with liquid, such as water or gasoline, it would operate in the same manner with liquid as with gas. We are of opinion, therefore, that the tribunals of the Patent Office were right in holding that there would be no invention in replacing the valves disclosed in the patent to Newton by the valve disclosed in the patent to Sneed, and that there would be no unobvious result by such substitution. It is unnecessary, therefore, that we consider the rejection of the claim on the disclosure in the patent to Newton in view of the disclosure in the patent to Ritz-Woller.

It is our view that claim 4 was properly rejected.

Claim 6 differs from claim 4 in that it is limited to a system which includes a differential manometer; that is, a pressure or vacuum gauge having one side connected with a source of fixed hydrostatic pressure. The only reference cited by the tribunals of the Patent Office showing a system of that character is that disclosed in the patent to Brown et al., and it was that patent which was used by the Patent Office tribunals as a basic reference in the rejection of claim 6. Each of the tribunals

was of opinion that it would not require invention to insert a gravity operated valve of the type disclosed in the patent to Ritz-Woller in the system disclosed in the patent to Brown et al., and claim 6 was rejected on the disclosure in the patent to Brown et al. in view of the disclosure in the patent to Ritz-Woller. The difficulty with the rejection of that claim, as we see it, is that the Brown et al. patent does not contemplate the possibility of tilting and provides no mechanism for offsetting it.

It is true that the patent to Ritz-Woller discloses a gravity operated valve for reducing the effect of tilting in a liquid level indicating system, but the patentee's valve is placed in the air line and not in a "liquid-containing position of the system," as called for by claim 6. However, there is nothing whatsoever in the record to indicate, except the mere assertions of the tribunals of the Patent Office, that the valve disclosed in the patent to Ritz-Woller, which involves an arrangement in which the fluid must pass through a chamois sleeve, could be satisfactorily used under water in a boiler system of the type disclosed in the patent to Brown et al.

As neither of the references cited against claim 6 discloses the combination therein defined, it is necessary in order to produce a structure of the type therein claimed, to insert an entirely new element in the Brown et al. system in a position which is not suggested by either of the references relied on in the rejection of that claim. Certainly there is no suggestion in either of the references that the valve disclosed in the patent to Ritz-Woller is adapted to be used in any liquid level indicating mechanism, such as defined by appealed claim 6. Accordingly, we are unable to subscribe to the view expressed by the tribunals of the Patent Office that the structure defined in claim 6 does not involve invention.

For the reasons stated, the decision of the Board of Appeals is modified, being affirmed as to claim 4 and reversed as to claim 6.